AO 102 (01/09) Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
for the
Northern District of Georgia

FILED IN CHAMBERS
U.S.D.C. - Rome
FEB 1 2 2016
JAMES N. HATTEN, Clerk
Deputy Clerk

In the Matter of the Tracking of )
*(Identify the person to be tracked or describe* )
*the object or property to be used for tracking)* )
A GRAY CHEVROLET EQUINOX, )
LICENSE PLATE NUMBER M44 29F, )
VIN 2CNFLCEW6A6225835 )

Case No. 4:16-MC-5-WEJ

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __18__ U.S.C. § __2423__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A GRAY CHEVROLET EQUINOX, LICENSE PLATE NUMBER M44 29F, VIN 2CNFLCEW6A6225835

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David R. Mullins, Special Agent
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: __2/12/16__

*Judge's signature*

City and state: Rome, Georgia

Walter E. Johnson, U. S. MAGISTRATE JUDGE
*Printed name and title*

I, David R. Mullins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device in a gray Chevrolet Equinox bearing license plate number M44 29F and vehicle identification number ("VIN") 2CNFLCEW6A6225835 ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of violations of 18 U.S.C. § 2423 related to travel with intent to engage in illicit sexual activity and that there is probable cause to believe that the installation of a tracking device in the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crime as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2.      I am a Special Agent with Homeland Security Investigations ("HSI"), and have been since May 18, 2003. In connection with my official duties as a Special Agent with HSI, I have received twenty weeks of extensive training investigating various violations of federal statutes at the Federal Law Enforcement Training Center, Glynco, Georgia. I have also received specialized training and experience in the enforcement of federal human trafficking and sex trafficking laws. I have been the affiant on multiple search and arrest warrants. I have received specialized training in undercover operations, interview techniques, and various other investigative techniques. I am personally familiar with and have used many standard methods of investigation, including but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, and interrogation. In addition to this training, I have interviewed numerous witnesses to, participants in, and victims of human sex trafficking organizations.

These persons have described to me the techniques that they and other organization members utilize to recruit, coerce, entice, intimidate, harbor, and transport persons to facilitate and further their criminal activity, to evade law enforcement, and to conceal the proceeds of their crimes. Their information included the use of vehicles to travel to various locations to meet and communicate with co-conspirators and to transport victims and/or co-conspirators to facilitate illegal activity.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. HSI is investigating Corrie GILLISPIE for violations of 18 U.S.C. § 2423 related to travel with intent to engage in illicit sexual activity and other offenses related to commercial sex trafficking by force, fraud, or coercion.

5. On October 8, 2009, Calhoun Police Department officers arrested GILLISPIE (who utilizes the street names: "Biggtyme," "Biggtyme Chattanooga Tyme," and/or simply "Tyme") in Calhoun, Georgia, during a joint HSI/Calhoun Police Department prostitution sting. GILLISPIE drove the vehicle that brought Amber GASTON to an undercover police officer who had responded to a local Craigslist advertisement for prostitution services. Law enforcement charged GILLISPIE with pimping and GASTON with prostitution. Both were convicted in July 2010.

6. On July 26, 2013, Chattanooga Police Department ("CPD") officers and Federal Bureau of Investigation ("FBI") agents arrested GASTON, Heather BILBREY, and GILLISPIE during a joint prostitution sting in Chattanooga, Tennessee. On this occasion, GASTON and

BILBREY arrived in a 1988 Buick sedan registered to GILLISPIE. Separately, agents and officers encountered GILLISPIE in the SUBJECT VEHICLE during surveillance, as he was circling the parking lot of the hotel where law enforcement officers arrested GASTON and BILBREY. Surveillance recognized GILLISPIE as the pimp of GASTON and BILBREY (Both females have GILLISPIE's moniker "Tyme" prominently tattooed on their faces, necks, and elsewhere.); CPD subsequently arrested and charged GILLISPIE with promoting prostitution.

7. In April 2014, HSI and FBI agents began utilizing a documented FBI source of information (hereafter referred to as "CS1") to communicate with GILLISPIE. CS1 initially began communicating with GILLISPIE via Facebook and then by telephone. The communications rapidly transitioned from the initial, casual, conversations to GILLISPIE's active recruitment of CS1 to prostitute for him. On April 21, 2014, GILLISPIE drove the SUBJECT VEHICLE to meet CS1 in Chattanooga, Tennessee, for the purpose of recruiting CS1 as a prostitute. During the conversation, which agents recorded with CS1's consent, GILLISPIE tells CS1 that he—GILLISPIE—has "never worked a job" in his life, yet he boasted about the amount of money he has made as a street hustler. Further, GILLISPIE attempted to entice CS1 into prostituting for him by informing CS1 of the large amounts of money that CS1 would earn from "tricks" (a term used to refer to customers of prostitution) if CS1 were working with him.

8. On October 14, 2015, affiant, agents from the Tennessee Bureau of Investigation, and CPD detectives encountered GASTON and BILBREY during a joint prostitution sting operation in Chattanooga, Tennessee. Agents acting in an undercover capacity contacted an advertisement for prostitution services that they discovered on Backpage.com. Upon calling the telephone number identified in the advertisement, an agent—acting in an undercover capacity—spoke with a female and requested the services of a prostitute at a specific location. Subsequently, GASTON and BILBREY, in the SUBJECT VEHICLE, arrived at that location,

where they negotiated with undercover agents for sex acts in return for money. Consequently, law enforcement arrested and charged BILBREY with prostitution after BILBREY rejected offers of assistance and victim's services from law enforcement and non-profit organizations. GASTON accepted the offer of services and was therefore not arrested or charged. GASTON was subsequently transported to a shelter for victims of human trafficking outside the Chattanooga, Tennessee, area. However, GASTON fled the shelter approximately one day later and thereafter avoided prosecution.

9. On February 3, 2016, Dalton Police Department ("DPD"), Georgia Bureau of Investigations, and HSI arrested GASTON in Dalton, Georgia, during a joint, multi-agency, multi-state prostitution sting operation. Leading to the arrest, agents acting in an undercover capacity contacted an advertisement for prostitution located on Backpage.com, requested prostitution services, and subsequently encountered GASTON when she arrived at their location driving the SUBJECT VEHICLE. Law enforcement arrested and charged GASTON with prostitution and additional criminal violations; currently, GASTON is incarcerated in Whitfield County, Georgia.

10. On February 8, 2016, affiant spoke with DPD Detective Chris Tucker about the encounter and arrest of Amber GASTON. Detective Tucker advised that DPD seized the SUBJECT VEHICLE and that DPD intends to obtain and execute a search warrant upon the contents of the vehicle. Detective Tucker advised affiant that upon completion of the search warrant, DPD intends to return the SUBJECT VEHICLE to GILLISPIE.

11. Based on the long-term repeated use of the SUBJECT VEHICLE in prostitution-related offenses in Georgia and Tennessee and the use of the SUBJECT VEHICLE in prostitution-related offenses even after contact with law enforcement, as detailed above, I believe that the subjects identified above and others will continue to use the SUBJECT VEHICLE in

Page 4 of 6

prostitution-related offenses in both Tennessee and Georgia. I further believe that tracking the SUBJECT VEHICLE will lead to evidence, fruits, and instrumentalities related to the aforementioned offense and the identification of persons engaged in the commission of the aforementioned offense and offenses related to the aforementioned offense.

12. I know that the SUBJECT VEHICLE is presently within the Northern District of Georgia but likely be brought back within the Eastern District of Tennessee following its release from law enforcement.

13. In order to track the movement of the SUBJECT VEHICLE effectively and to decrease the chance of detection, I seek authorization to place a tracking device in the SUBJECT VEHICLE while it is in the Northern District of Georgia.

14. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of forty-five days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of HSI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in the SUBJECT VEHICLE within the Northern District of Georgia within ten days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; and to monitor the tracking device for a period of forty-five

days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Northern District of Georgia.

16. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for thirty days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

17. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the HSI, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.